vijay k. toke
vijay@cobaltlaw.com
510.841.9800

FILED VIA ECF

July 17, 2015

Hon. Cathy Seibel
United States Judge
Charles L. Brieant United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

RE: *The Wave Studio, LLC v. American Express Company*
Case No. 7:15-cv-03420-CS

*The Wave Studio, LLC v. General Hotel Management Ltd., et al.*
Case No. 7:13-cv-09239-CS-PED

Dear Judge Seibel:

Plaintiff The Wave Studio, LLC ("Wave") submits the following letter brief in opposition to the American Express Company's ("Amex") motion to stay this proceeding as to it:

FACTUAL BACKGROUND

Plaintiff is a limited liability company organized under the laws of the State of New York, with its principal place of business at One Barker Avenue, #542, White Plains, New York 10601. Plaintiff is a business entity operated by photographer Junior Lee, a Malaysian citizen currently domiciled in Singapore. Ms. Lee creates marketing materials for businesses worldwide using her original works, but retains ownership of all rights, title, and interest in and to all artistic works used therein. The Wave Studio, LLC was formed to hold, manage, and control the U.S. intellectual property rights to these works, including, but not limited to, several U.S. copyright registrations.

As the Court is aware, Wave, through Ms. Lee, created a body of photographs (the "Hotel Photographs") for use in collateral materials by Defendant General Hotel Management ("GHM"). The Hotel Photographs are now the subject of various valid U.S. copyright registrations (the "Copyrighted Works").

Unbeknownst to Ms. Lee or Wave, at some point GHM, the hotels, and/or some other unknown parties disseminated to third parties the Hotel Photographs separate from

the collateral materials for which they were taken. In turn, some of these third parties, many of whom are defendants this action, further disseminated the Hotel Photographs to yet other third parties. As a result of this extensive proliferation, the Hotel Photographs that are the subject of the Copyrighted Works have been widely displayed on the Internet without Plaintiff's authorization or compensation and continue to be displayed to thousands of users on a daily basis.

On July 2, 2014, this Court held a hearing on GHM's motion to stay the proceedings as to the defendants and to narrow the scope of discovery. GHM in its letter brief on that motion claimed to have the "right to use and *distribute* the photographs to the other Defendants," an issue that GHM claimed would be case dispositive as to GHM and the "vast majority" of the Defendants sued in the action. GHM Letter Mtn., 7:13-cv-09239-CS-PED, ECF No. 50, pg. 2 (emphasis added). The Court granted the stay. Adjudication of GHM's right to "use and distribute" the photographs to the other Defendants shall be referred herein as the "GHM threshold issue."

As noted in Amex's letter motion, GHM's counsel specifically noted that there are some defendants that did not receive the Hotel Photographs from GHM and therefore "…the plaintiff may not want to stay the case as to those defendants because they're not affected by the threshold issue." Conf. Tr., Gen. Hotel Mgmt., 7:13-cv-09239-CS-PED (S.D.N.Y. July 2, 2014) at 12-13; Amex Ltr. Mtn. re Stay, 7:15-cv-03420-CS-PED, ECF No. 43, at Pg. 3. While Plaintiff's then-counsel indicated it would agree to a stay as to all defendants, regardless of whether they were subject to the GHM threshold issue or not, Plaintiff now believes that the stay is not appropriate as to any new defendants either consolidated with or added into the GHM litigation whose liability would not be affected by the GHM threshold issue.

As explained further below, Amex is such a new defendant. It should not be subject to the stay.

## ARGUMENT

A. A Stay Is Not Appropriate As To Any Party That Did Not Receive The Infringing Photographs Directly From GHM.

   1. *Amex admits it did not receive the photographs from GHM.*

As Amex's motion admits, it didn't receive the infringing photographs from GHM. Amex Ltr. Mtn. re Stay, 7:15-cv-03420-CS-PED, ECF No. 43, at Pg. 3. Amex notes half of the websites on which it displayed infringing photos were hosted by current or former defendants to the GHM Litigation (Case No. 7:13-CV-9239-CS-PED) and that those entities (not GHM) provided the photographs at issue. Amex Ltr. Mtn. re Stay,

7:15-cv-03420-CS-PED, ECF No. 43, Pg. 3. Amex does not indicate where the photographs for the other half of its infringing photographs came from. But it is presumably not GHM, or Amex would have said so. As such, Amex's letter makes crystal clear that GHM did not directly give the photographs to Amex, and that GHM has no contractual or other obligation to Amex.

This fact is key to whether the stay should extend to Amex. As Amex's letter notes, at the July 2, 2014 hearing before this Court, GHM's counsel indicated that for those defendants who did not receive photographs directly from GHM, the stay did not need to apply. Amex Ltr. Mtn. re Stay, 7:15-cv-03420-CS-PED, ECF No. 43, at Pg. 2, fn. 1. While it is true that Plaintiff's former counsel then agreed to the stay even as to those defendants for whom the GHM threshold issue would not apply, it was at a time that GHM was working to identify those defendants to whom it directly provided photographs (which it is still determining, over a year later). As GHM's counsel noted, and Amex points out in its letter brief, GHM's counsel acknowledged that the stay need not apply to those parties who did not receive the photographs from GHM. Conf. Tr., Gen. Hotel Mgmt., 7:13-cv-09239-CS-PED (S.D.N.Y. July 2, 2014), Pgs. 12-13; Amex Ltr. Mtn. re Stay, 7:15-cv-03420-CS-PED, ECF No. 43, at Pg. 2, fn. 1. Amex in its own letter brief therefore admits facts establishing it does not fit into the category of defendants that belongs under the stay.

2. *The threshold GHM issue will have no bearing on Amex's liability.*

The disposition of the GHM threshold issue will have no bearing on Amex's liability because even if such an implied license existed, it would not permit the distribution to Amex. In this Circuit, implied licenses are only found in "narrow circumstances" where "one party 'created' a work at the [other's] request and handed it over, intending that [the other] copy and distribute it]'" *SmithKline Beecham Healthcare, L.P. v. Watson Pharms. Inc.*, 211 F.3d 21, 25 (2d Cir. 2000). Such implied licenses are created where an author creates a work with knowledge and intent that the work would be used by another for a specific purpose. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990). Courts do not find implied licenses where, as here, the nature of the use is contested. *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F.Supp.2d 301, 317 (S.D.N.Y. 2000).

In *SHL Imaging*, in fact, this Court granted summary judgment on copyright liability to a copyright plaintiff, where the defendant claimed it had an implied license to allow it to use photographs in a subsequently created catalogue that it had originally purchased from a photographer for use in color slides for its sales force. *Id.* at 303. This Court ruled that such a use by the defendant constituted copyright infringement because the photographs were purchased for one marketing use, and the defendant published the photographs in another, unauthorized marketing use. *Id.* at 318.

Similarly, here, GHM argues that it had an implied license to distribute Wave's Hotel Photographs, which were created for use in various marketing collateral ordered from Wave. Wave, of course, disagrees that GHM had such an implied license. However, given the narrow circumstances in which this Circuit will find an implied license, it is clear that the subsequent distribution of Hotel Photographs by recipients of photographs from GHM—third-party recipients who have no connection to and are not in privity with Wave—to yet other third parties (as apparently occurred here with Amex) cannot be subject to an implied license to GHM. Thus, the threshold issue with GHM will have no effect on Defendants such as Amex that did not receive the photographs from GHM.

Moreover, as Amex further admits, a number of properties depicted in the photographs at issue in this case are no longer managed by GHM. Amex Ltr. Mtn. re Stay, *Amex*, ECF No. 43, at Pg. 3. In truth, GHM ceased managing nearly all of the properties depicted years ago. Therefore, even if GHM were correct and even if Amex's sources were legally authorized to sublicense the rights to the photographs to Amex, any such license would have ended when GHM ceased providing management services. The threshold issue with GHM, therefore, has no bearing on Amex's liability in this case.

Accordingly, Amex and the other defendants who have argued that not extending the stay to Amex would require the parties to litigate the threshold issue of Wave's copyright ownership twice are incorrect. Even if GHM had an implied license to distribute the Hotel Photographs to third parties, that license could not extend to give recipients of Hotel Photographs rights to further distribute the photographs, especially where GHM severed its relationship with the hotels depicted years ago. The law provides no basis to imply a license with multiple sublicensing layers that would outlive the contractual relationship underlying the license.

B. Amex Has Not Established That A Stay Is Appropriate.

As Amex admits, it bears the burden of making a "clear case of hardship or inequity in being required to move forward…." *Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM), 2011 WL 1143010, *6 (S.D.N.Y. Mar. 21, 2011); Amex Ltr. Mtn. re Stay, 7:15-cv-03420-CS-PED, ECF No. 43, at Pg. 4. Amex also cites this Circuit's five-factor test for whether to grant a stay: (1) The private interests of the Plaintiffs in the proceeding expeditiously with the civil litigation as balanced against the prejudice to the Plaintiffs if delayed, (2) the private interests of and burden on the Defendants; (3) the interests of the courts, (4) the interests of the persons not parties to the civil litigation, and (5) the public interest. *GTFM, Inc. v. Park*, No. 02 Civ. 7020 (DLC); 2002 WL 31890940, *2 (S.D.N.Y. Dec. 30, 2002)(citations omitted); Amex Ltr. Mtn. re Stay, 7:15-cv-03420-CS-PED, ECF No. 43, at Pg. 4.

To meet this high standard, Amex states, without support, that all five factors support its position. As explained below, the facts here do not support the grant of a stay.

1. *Plaintiff will be prejudiced by a stay.*

A stay of indefinite period, such as the one Amex requests, is more likely to cause prejudice to a plaintiff, and "[a] civil plaintiff has an interest in having [its] case resolved quickly." *Sanrio, Inc. v. Ronnie Home Textile, Inc.*, 2015 WL 1062035, *3 (C.D. Cal. 2015).

Amex's only support for the proposition that Wave will not be prejudiced by the stay is that the GHM litigation is already proceeding. While a true statement on its face, it means nothing here because, as discussed above, the GHM threshold issue has no bearing on Amex's liability since it did not receive the infringing photographs directly from GHM, a fact GHM's counsel acknowledged at the July 2, 2014 hearing with respect to defendants in Amex's position.

On the other hand, to force Plaintiff to address liability as to Amex (and all the other defendants in the same position) along with the indemnity issues will certainly prejudice plaintiff. *See American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge N. Am.*, 474 F.Supp.2d 474, 491 (S.D.N.Y. 2007) (Noting that a stay would force the plaintiff to wait potentially years for a decision, which is "precisely the sort of substantial prejudice to a party that the law seeks to avoid.") Indeed, the ability to enforce valid rights against infringers now will allow Plaintiff to adjudicate or settle such claims more expeditiously. In the face of the rampant unauthorized display of Plaintiff's photographs, offering Plaintiff the opportunity to tackle infringers in the manner and timing it deems appropriate will benefit Plaintiff immensely. By contrast, forcing Plaintiff to forestall enforcement efforts against infringers that are unaffected by the GHM threshold issue will hamstring Plaintiff's costly enforcement efforts and force it to incur greater expense, expense that it could recover from other defendants.

This factor weighs in Plaintiff's favor.

2. *Amex will not be prejudiced by the stay.*

Amex claims it will be prejudiced because it will "commence litigation of claims that are already stayed as to GHM Defendants who hosted and/or managed the American Express-branded websites." Amex is incorrect. Amex did not receive the infringing photographs from GHM. Copyright infringement is a strict liability tort. Even assuming *arguendo* that the GHM threshold issue applies to third parties to whom GHM distributed

photographs, it cannot by definition apply to use by those who received the photographs from those third parties. Aware of this, GHM has not claimed otherwise. Therefore, Amex's infringement is independent and not subject to the GHM threshold issue. Copyright law includes no transitive property that would enable Amex to take advantage of another party's status.

Amex's assertion that it would be prejudiced if forced to file cross-claims for indemnity should Plaintiff's claims against it go forward ring hollow. First, even if forced to, the burden of having to re-litigate indemnity issues is not likely to be particularly burdensome to Amex. *See American Steamship*, supra, 474 F.Supp.2d at 491 (ruling that prejudice from defendant having to litigate indemnity twice in two different jurisdictions was "minimal" and did not favor a stay because fundamental issues of liability could affect indemnity issues that would simplify the litigation the second time around).

Second, any arguable prejudice to Amex (which Plaintiff denies) could be remedied by staying Amex's indemnity claims along with the rest of the defendants' claims that have already been stayed. On the other hand, as discussed above, a stay would prejudicially force Plaintiff to wait an inordinate amount of time to litigate liability against a defendant whose liability does not depend on the GHM threshold issue. And given that the indemnity issues may be greatly clarified in the liability phase, such prejudice to Plaintiff is unwarranted.

Third, Amex admits that at least one of its indemnitors has already accepted its indemnity obligation. Therefore, regardless of the outcome, Amex is indemnified and can suffer no prejudice from having to move forward with its defense.

> 3. *The interests of the court, third parties, and the public do not favor a stay.*

The interests of the court favor denying the stay. If claims against defendants that did not receive photographs from GHM, such as Amex, were allowed to proceed, it would promote either settlement of the case or adjudication as to such defendants, allowing the Court to streamline and simplify this complex dispute. The Court can further enhance this efficiency by staying all indemnity claims of all defendants while allowing issues of liability to continue to be litigated as to those defendants not subject to the GHM threshold issue.

Neither do the interests of third parties favor a stay. Any issues as to current or future third-party indemnity defendants, the Court could stay those issues for the future,

an action regularly taken by the courts, as liability issues often clarify such indemnity obligations.

      Finally, the public interest favors denial of Amex's motion. The public has an interest in having copyrights protected. *Sanrio, Inc. v. Ronnie Home Textile, Inc.*, 2015 WL 1062035, *4 (C.D. Cal. 2015). Where, as here, Amex did not receive the infringing photographs from GHM, its infringement of Wave's copyrights is independent of any other party's infringement, and any indemnity obligations related to such infringement can be addressed once liability overall has been adjudicated. The public has an interest in allowing a plaintiff, like Wave, to enforce its copyright rights. *Id.* at *4.

## CONCLUSION

      For the foregoing reasons, Plaintiff The Wave Studio respectfully requests that this Court DENY Amex's motion for stay.

Respectfully submitted,

COBALT LLP


/s/ Vijay K. Toke

VKT/na


cc:    Anthony T. Pierce

       Carolyn Mattus